■ DAYTOP VILLAGE, INC., Appellant, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent.—Order, Supreme Court, New York County, entered October 3, 1977, unanimously modified, on the law and on the facts, to the extent of reducing the undertaking to one in the amount of $1,000, and otherwise affirmed. Appellant shall recover $40 costs and disbursements of this appeal from respondent. Plaintiff-appellant (Daytop Village, Inc.) is a nonprofit corporation that conducts various narcotics rehabilitation centers and is widely known for its important and worthwhile efforts in combating problems of drug addiction. On or about September 22, 1972, Daytop Village

took possession of certain premises located at 54 West 40th Street, which were intended to be its administrative offices. Following a period of repair and rehabilitation, the premises were partially opened for operation in April, 1973, and were fully, or almost fully occupied on or about September, 1973, as a narcotics rehabilitation center and as Daytop's administrative offices. Daytop Village is primarily financed by New York State funds which are allocated on the basis of budgets submitted in advance for all items, including electricity and heating. Throughout the period of this building's operation, Daytop Village has been supplied by Consolidated Edison with electric current as well as steam heating for the building and at all times has duly paid the monthly bills that were submitted. Sometime in April or May, 1976, Consolidated Edison discovered that one of the meters providing current for steam had been defective, estimated the value of that which had been provided during the intervening period of time as $99,459.90 and apparently without prior notice, appended to its regular bill a claim for this sum of money. After a conference with regard to the deficiency, Consolidated Edison reduced the balance to $56,100.37. Thereafter, following an informal hearing at an office of the Public Service Commission, a direction was issued to Consolidated Edison to reduce the charges by an additional $14,000, resulting in a new balance of $42,137. Daytop Village, as it clearly had a right to do, filed an appeal to the full Public Service Commission on July 21, 1977, contesting this figure. The pendency of this appeal was made known to Consolidated Edison. Nonetheless, Consolidated Edison, by letter of July 28, 1977, threatened that if it did not receive payment of the alleged balance by August 8, 1977, service would be discontinued. There can be no doubt that the threatened termination would have inflicted irreparable injury on Daytop Village, and would have impaired severely its important and useful work. By order to show cause, Daytop Village moved for an order staying and enjoining Consolidated Edison from the threatened discontinuance of electric service and steam for heating at its premises. This motion was granted at Special Term in an order entered on October 3, 1977, on condition that Daytop Village file an undertaking in the sum of $25,000. The only issue raised on this appeal is the correctness of the requirement of the undertaking, enforcement of which has been previously stayed by this court pending determination of the appeal. It is true that CPLR 6312 (subd [b]) provides in mandatory language that "prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction". An obvious difficulty with the undertaking required here is that there has been no showing whatever of damage that Consolidated Edison might suffer in the event it were determined that the injunction should not have been granted. The record is clear that Daytop Village is paying all current bills. The supposed damage that might be suffered by Consolidated Edison presumably is that they are being deprived of the right to coerce Daytop Village into making an immediate payment, obviously beyond the present capacity of that nonprofit institution to make, which obligation developed from the negligence of Consolidated Edison, and the correct amount of which is still to be determined by the responsible administrative agency. We do not believe that this "kind of damage" is embraced by that portion of CPLR 6312 (subd [b]) intended to protect defendants in connection with an erroneously issued preliminary injunction. The very most by way of an undertaking that this record supports would be a nominal one designed to protect

the defendant in connection with any costs that it may have assumed in connection with the preliminary injunction. For that purpose an undertaking in the sum of $1,000 is sufficient. Nor should anything in the foregoing be taken as a suggestion that Consolidated Edison might properly threaten to discontinue service to Daytop Village following a final determination by the Public Service Commission of an amount due. Considering the fact that whatever obligation is ultimately fixed will have been incurred through the fault of Consolidated Edison, and the nature of the nonprofit institution's financing is such that it could not reasonably be expected to make immediately a lump sum payment of a substantial amount, an effort to enforce payment of such an obligation by cutting off services to which Daytop Village is entitled would be hard to justify. It seems clear that Consolidated Edison, following the final action of the Public Service Commission, should consider pursuing the other remedies provided by law for those who have a legal claim for money for services rendered. Concur—Lupiano, J. P., Birns, Lane, Sandler and Sullivan, JJ.